**JASON I. SER**
California State Bar No. 201816
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
jason_ser@fd.org

Attorneys for Mr. Rendon-Lara

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JANIS L. SAMMARTINO)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No.: 08cr1367-JLS |
| Plaintiff, ) | Date: May 30, 2008 |
|  ) | Time: 1:30 p.m. |
| v. ) | |
|  ) | **STATEMENT OF FACTS AND POINTS AND** |
| VICTOR HUGO RENDON-LARA, ) | **AUTHORITIES IN SUPPORT OF MOTIONS** |
|  ) | |
| Defendant. ) | |

**I.**

**STATEMENT OF FACTS**[1]

On April 3, 2008, at approximately 6:35 p.m., Victor Hugo Rendon-Lara arrived at the San Ysidro, California Port of Entry. Mr. Rendon-Lara was the driver and sole occupant of a Chevrolet Suburban with California license plates. At primary inspection, Mr. Rendon-Lara presented his United States passport and a California commercial driver's license. He indicated that he was bringing back cokes (sodas) and chips from Mexico. The primary inspector examined the rear of the Suburban and found two large cylindrical carton containers without labels. Upon inquiry, Mr. Rendon-Lara informed the inspector that the containers

---

[1] The following statement of facts is based, in part, on materials received from the government. The facts alleged in these motions are subject to elaboration and/or modification at the time these motions are heard. Mr. Rendon-Lara reserves the right to take a position contrary to the following statement of facts at the motions hearing and at trial.

1  contained grease to clean semi-trucks and that he purchased it in the United States. Mr. Rendon-Lara was
2  referred to secondary inspection.

3  In secondary inspection, Mr. Rendon-Lara's vehicle underwent a 7-point inspection. After examining
4  the containers described above, the inspectors concluded that their contents possibly could be hazardous
5  materials. Accordingly, inspectors contacted a third-party contractor to determine the nature of the materials
6  and secure them. Patriot Environmental Services responded to the port of entry and determined the contents
7  of the containers to be iodine. The total weight of the containers and their contents was 102.85 kilograms.
8  At some time during this inspection, Mr. Rendon-Lara was arrested, taken to the secondary security office
9  and patted down.

10  At approximately 9:41 p.m. that same night, agents advised Mr. Rendon-Lara of his rights pursuant
11  to <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). Mr. Rendon-Lara purportedly waived his rights and made the
12  following statements in response to questioning by the agents. First, he denied knowledge that the
13  containers contained iodine. He explained he bought the containers in Irwindale, California (near Los
14  Angeles) and believed they contained degreaser. He stated he purchased them from two unknown men for
15  $500. These men demonstrated the degreaser's abilities by pouring it into a small water bottle, shaking it
16  and applying it to his semi-truck. The degreaser cleaned his semi-truck clean. Mr. Rendon-Lara was told
17  that each container held about 35 pounds of degreaser and that 5 pounds of degreaser could clean about 5
18  semi-trucks. He was told to wear gloves when using the degreaser as it would cause white blisters upon
19  skin-contact. Mr. Rendon-Lara further explained that once his work day ended and he had parked his semi-
20  truck in Santa Fe Springs, California, he moved the containers from his semi-truck to his Suburban.
21  Thereafter, he gave a friend a ride to the airport in Tijuana.

22  On April 30, 2008, Mr. Rendon-Lara was charged by a grand jury in an indictment with violating
23  18 U.S.C. § 545 - Importing Merchandise Subject to Seizure. He pled not guilty to this charge.

**II.**

**MOTION TO PRESERVE AND INSPECT EVIDENCE**

Mr. Rendon-Lara requests the preservation of all physical evidence in this case. This includes any evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government (or its private contractors) in this case. See United States v. Riley, 189 F.3d 802, 806-808 (9th Cir.1999). This request includes, but is not limited to: (1) the alleged contraband/merchandise involved in the case, including samples used to conduct tests; (2) the containers or packaging within which the contraband/merchandise was discovered; (3) the results of any fingerprint analysis; (4) the defendant's personal effects; (5) any videotapes capturing Mr. Rendon-Lara in this matter; (6) recorded communications made by the government related to the above captioned case; (7) any evidence seized from the defendant or any third party; and, (8) the vehicle seized at the port of entry. Mr. Rendon-Lara requests that government counsel be ordered to notify the agencies and private contractors with custody of such evidence be informed of the Court's preservation order.

Further, Mr. Rendon-Lara requests an order granting defense counsel and/or their investigators access to the alleged contraband/merchandise and other evidence for the purposes of investigation, including inspection, photographing, and re-weighing of the alleged contraband if necessary. Fed. R. Crim. P. 16(a)(1)©. A proposed Order is attached for the convenience of the Court.

Mr. Rendon-Lara requests that the alleged contraband be preserved until inspection and weighing by the defense is complete and that the remainder of the evidence in the case be preserved throughout the pendency of the case, including any appeals.

**III.**

**MOTION TO COMPEL DISCOVERY**

Mr. Rendon-Lara moves for the production of the following discovery. This request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely related investigative [or other] agencies." See United States v. Bryan, 868 F.2d 1032 (9th Cir.), cert. denied, 493 U.S. 858 (1989).

(1) The Defendant's Statements. The Government must disclose to the defendant all copies of any written or recorded statements made by the defendant; the substance of any statements made by the

defendant which the Government intends to offer in evidence at trial; any response by the defendant to interrogation; any written summaries of the defendant's oral statements contained in the handwritten notes of the Government agent(s) as well as any reports containing such; any response to any Miranda warnings which may have been given to the defendant; as well as any other statements by the defendant. Fed. R. Crim. P. 16(a)(1)(A)-(B). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the Government must reveal all the defendant's statements, whether oral or written, regardless of whether the government intends to make any use of those statements.

(2) Arrest Reports, Notes and Dispatch Tapes. The defendant also specifically requests the Government to turn over all arrest reports, notes, dispatch or any other tapes, and TECS records that relate to the circumstances surrounding his arrest or any questioning. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of the defendant or any other discoverable material is contained. Such material is discoverable under Fed. R. Crim. P. 16(a)(1)(A)-(B) and Brady v. Maryland, 373 U.S. 83 (1963). The Government must produce arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to the defendant. See Fed. R. Crim. P. 16(a)(1)(A) and (B), Fed. R. Crim. P. 26.2 and 12(h).

(3) Brady Material. The defendant requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the Government's case. Under Brady, impeachment as well as exculpatory evidence falls within the definition of evidence favorable to the accused. United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976).

(4) Any Information That May Result in a Lower Sentence Under The Guidelines. The Government must produce this information under Brady v. Maryland, 373 U.S. 83 (1963). This request includes any cooperation or attempted cooperation by the defendant as well as any information that could affect any base offense level or specific offense characteristic under Chapter Two of the Guidelines. The defendant also requests any information relevant to a Chapter Three adjustment, a determination of the defendant's criminal history, and information relevant to any other application of the Guidelines.

(5) The Defendant's Prior Record. The defendant requests disclosure of his prior record. Fed. R. Crim. P. 16(a)(1)(D).

(6) <u>Any Proposed 404(b) Evidence</u>.  The government must produce evidence of prior similar acts under Fed. R. Crim. P. 16(a)(1)(D) and Fed. R. Evid. 404(b) and 609.  In addition, under Rule 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial.  The defendant requests that such notice be given three (3) weeks before trial in order to give the defense time to adequately investigate and prepare for trial.

(7) <u>Evidence Seized</u>.  The defendant requests production of evidence seized as a result of any search, either warrantless or with a warrant.  Fed. R. Crim. P. 16(a)(1)(E).

(8) <u>Tangible Objects</u>.  The defendant requests the opportunity to inspect and copy as well as test, if necessary, all other documents and tangible objects, including photographs, books, papers, documents, fingerprint analyses, vehicles, or copies of portions thereof, which are material to the defense or intended for use in the Government's case-in-chief or were obtained from or belong to the defendant.  Fed. R. Crim. P. 16(a)(1)(E).

(9) <u>Evidence of Bias or Motive to Lie</u>.  The defendant requests any evidence that any prospective Government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or his testimony.

(10) <u>Impeachment Evidence</u>.  The defendant requests any evidence that any prospective Government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to the defendant.  <u>See</u> Fed R. Evid. 608, 609 and 613; <u>Brady v. Maryland</u>, <u>supra</u>.

(11) <u>Evidence of Criminal Investigation of Any Government Witness</u>.  The defendant requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.

(12) <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling</u>.  The defense requests any evidence, including any medical or psychiatric report or evaluation, that tends to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic.

1  (13) <u>Witness Addresses</u>.  The defendant requests the name and last known address of each prospective Government witness.  The defendant also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will <u>not</u> be called as a Government witness.

(14) <u>Name of Witnesses Favorable to the Defendant</u>.  The defendant requests the name of any witness who made an arguably favorable statement concerning the defendant or who could not identify him who was unsure of his identity, or participation in the crime charged.

(15) <u>Statements Relevant to the Defense</u>.  The defendant requests disclosure of any statement relevant to any possible defense or contention that he might assert.

(16) <u>Jencks Act Material</u>.  The defendant requests production in advance of trial of all material, including dispatch tapes, which the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500.  Advance production will avoid the possibility of delay at the request of defendant to investigate the Jencks material.  A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under § 3500(e)(1).  <u>Campbell v. United States</u>, 373 U.S. 487, 490-92 (1963).  In <u>United States v. Boshell</u>, 952 F.2d 1101 (9th Cir. 1991) the Ninth Circuit held that when an agent goes over interview notes with the subject of the interview the notes are then subject to the Jencks Act.

(17) <u>Giglio Information</u>.  Pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, express or implied, made to any Government witnesses, in exchange for their testimony in this case, and all other information which could arguably be used for the impeachment of any Government witnesses.

(18) <u>Agreements Between the Government and Witnesses</u>.  The defendant requests discovery regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective Government witness and the Government (federal, state and/or local).  This request also includes any discussion with a potential witness about or advice concerning any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed.

1    (19) <u>Informants and Cooperating Witnesses</u>.  The defendant requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Rendon-Lara.  The Government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown or unknowable to the defense. <u>Roviaro v. United States</u>, 353 U.S. 53, 61-62 (1957).  The Government must disclose any information derived from informants which exculpates or tends to exculpate the defendant.

   (20) <u>Bias by Informants or Cooperating Witnesses</u>.  The defendant requests disclosure of any information indicating bias on the part of any informant or cooperating witness. <u>Giglio v. United States</u>, 405 U.S. 150 (1972).  Such information would include what, if any, inducements, favors, payments or threats were made to the witness to secure cooperation with the authorities.

   (21) <u>Government Examination of Law Enforcement Personnel Files</u>.  Mr. Rendon-Lara requests that the Government examine the personnel files and any other files within its custody, care or control, or which could be obtained by the government, for all testifying witnesses, including testifying officers.  Mr. Rendon-Lara requests that these files be reviewed by the Government attorney for evidence of perjurious conduct or other like dishonesty, or any other material relevant to impeachment, or any information that is exculpatory, pursuant to its duty under <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991).  The obligation to examine files arises by virtue of the defense making a demand for their review: the Ninth Circuit in <u>Henthorn</u> remanded for <u>in camera</u> review of the agents' files because the government failed to examine the files of agents who testified at trial.  This Court should therefore order the Government to review all such files for all testifying witnesses and turn over any material relevant to impeachment or that is exculpatory to Mr. Rendon-Lara prior to trial.  Mr. Rendon-Lara specifically requests that the prosecutor, not the law enforcement officers, review the files in this case.  The duty to review the files, under <u>Henthorn</u>, should be the prosecutor's.  Only the prosecutor has the legal knowledge and ethical obligations to fully comply with this request.

   (22) <u>Expert Summaries</u>.  Defendant requests written summaries of all expert testimony that the government intends to present under Federal Rules of Evidence 702, 703 or 705 during its case in chief, written summaries of the bases for each expert's opinion, and written summaries of the experts'

1 qualifications. Fed. R. Crim. P. 16(a)(1)(F). This request includes, but is not limited to, fingerprint expert
2 testimony.

3     (23) <u>Residual Request</u>. Mr. Rendon-Lara intends by this discovery motion to invoke his rights to
4 discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution
5 and laws of the United States. This request specifically includes all subsections of Rule 16. Mr. Rendon-
6 Lara requests that the Government provide him and his attorney with the above requested material
7 sufficiently in advance of trial to avoid unnecessary delay prior to cross-examination.

## IV.

## **MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS**

10     Defense counsel requests leave to file further motions and notices of defense based upon information
11 gained in the discovery process as well as defense investigation.

## V.

## **CONCLUSION**

14     For these and all the foregoing reasons, the defendant, Mr. Rendon-Lara, respectfully requests that
15 this Court grant his motions and grant any and all other relief deemed proper and fair.

16                                 Respectfully submitted,

18                                   *s/ Jason I. Ser*
DATED: May 19, 2008              JASON I. SER
19                                   Federal Defenders of San Diego, Inc.
                                  Attorneys for Mr. Rendon-Lara
20                                   E-mail: jason_ser@fd.org