1  KAREN P. HEWITT
United States Attorney
2  WILLIAM A. HALL, JR.
Assistant U.S. Attorney
3  California State Bar No. 253403
United States Attorney's Office
4  880 Front Street, Room 6293
San Diego, California 92101-8893
5  Telephone: (619) 557-7046/(619) 235-2757 (Fax)
Email: william.a.hall@usdoj.gov

6
Attorneys for Plaintiff
7  United States of America

8              UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10                                    )    Criminal Case No. 08CR1367-JLS
   UNITED STATES OF AMERICA,          )
11                                    )    DATE:        August 15, 2008
                        Plaintiff,    )    TIME:        1:30 p.m.
12                                    )    Before Honorable Janis L. Sammartino
              v.                      )
13                                    )
   VICTOR HUGO RENDON-LARA,           )    UNITED    STATES'    STATEMENT    OF
14                                    )    FACTS    AND    MEMORANDUM    OF
                        Defendant(s). )    POINTS AND AUTHORITIES
15  ————————————————————————          )

16                         **I**

17              **STATEMENT OF THE CASE**

18         The Defendant, Victor Hugo Rendon-Lara (hereinafter "Defendant"), was charged by a

19  grand jury on April 30, 2008 with violating 18 U.S.C. § 545, importation of merchandise subject

20  to seizure.  Defendant was arraigned on the Indictment on May 1, 2008, and entered a plea of not

21  guilty.

22                         **II**

23              **STATEMENT OF FACTS**

24         Defendant was apprehended on the evening of April 3, 2008, by United States Customs and

25  Border Protection ("CBP") Officers at the San Ysidro, California Port of Entry.  There, Defendant

26

27

28                         3                    08CR1367-JLS

1    entered the vehicle inspection lanes as the driver, registered owner, and sole occupant of a 1997

2    Chevrolet Suburban ("the vehicle").

3         At primary inspection, a CBP Officer asked Defendant what he was bringing from Mexico.

4    Defendant responded that he was bringing back soda and chips.  The CBP Officer inspected the

5    rear of the vehicle and discovered two large cylindrical carton containers without labels.  Upon

6    being asked what these items were, Defendant replied that the containers held grease used to clean

7    semi trucks and that he had purchased the items in the U.S.  The CBP Officer discovered that the

8    containers were extremely heavy for the size of the containers.  Upon probing the containers, the

9    CBP Officer suspected the containers contained iodine.  He then escorted Defendant to the security

10   office and the vehicle was turned over to the vehicle secondary lot for further inspection.

11        There, upon further inspection of the vehicle, the two containers containing suspected

12   iodine were removed from the vehicle.  Officials from a contract environmental services company

13   determined that the containers did indeed contain iodine.  The containers had a combined weight

14   of approximately 102.85 kilograms.

15

16                                         **III**

17                    **MEMORANDUM OF POINTS AND AUTHORITIES**

18   **A.    THE  GRAND  JURY  INSTRUCTIONS  WERE  NOT  FAULTY,  AND  THE
           INDICTMENT SHOULD NOT BE DISMISSED**

19        Defendant moves to dismiss the indictment against him for alleged errors in the instructions

20   given to the indicting grand jury during its impanelment by the Honorable Larry A. Burns on

21   January 10, 2007.  The United States explicitly incorporates by reference its extensive briefing on

22   this issue submitted in United States v. Martinez-Covarrubias, 07CR0491-BTM, United States v.

23   Renovato, 07CR3413-BEN, United States v. Barron-Galvan, 07CR3469-H, and United States v.

24   Villaescusa, 08cr0255-JLS.  These related motions have been denied by each and every court in

25   this district that has considered them, including this Court, and should also be denied in this case.

26

27

28                                         4                    08CR1367-JLS

1   The United States would be happy to supplement its response and opposition to these motions at

2   the Court's request.

3

4   **B.     DEFENDANT'S MOTION TO PRODUCE GRAND JURY TRANSCRIPTS SHOULD BE DENIED**

5          Defendant moves for production of the grand jury transcripts in the proceedings leading

6   to his indictment.  This request must be denied, since  Defendant does not support the request with

7   any showing remotely approaching the level of necessity required to invade the sanctity of the

8   grand jury's deliberations.

9          The need for grand jury secrecy remains paramount unless the defendant can show "a

10  particularized need" that outweighs the policy of grand jury secrecy.  United States v. Walczak,

11  783 F.2d 852, 857 (9th Cir. 1986); United States v. Murray, 751 F.2d 1528, 1533 (9th Cir. 1985).

12  Furthermore, it is well settled that the grand jury may indict someone based on inadmissible

13  evidence or evidence obtained in violation of the rights of the accused.  See United States v.

14  Mandujano, 425 U.S. 564 (1976) (indictment brought based on evidence obtained in violation of

15  defendant's right against self-incrimination); United States v. Calandra, 414 U.S. 338, 343 (1974);

16  United States v. Blue, 384 U.S. 251 (1966) (indictment brought based on evidence obtained in

17  violation of defendant's right against self-incrimination); Lawn v. United States, 355 U.S. 339

18  (1958); Costello v. United States, 350 U.S. 359, 363 (1956) ("neither the Fifth Amendment nor any

19  other constitutional provision prescribes the kind of evidence upon which grand juries must act");

20  see also Reyes v. United States, 417 F.2d 916, 919 (9th Cir. 1969); Johnson v. United States, 404

21  F.2d 1069 (9th Cir. 1968); Wood v. United States, 405 F.2d 423 (9th Cir. 1968);  Huerta v. United

22  States, 322 F.2d 1 (9th Cir. 1963).

23         The Ninth Circuit has recognized the grand jury's unique history, secrecy, and role.  See

24  United States v. Navarro-Vargas, 408 F.3d 1184, 1188-1201 (9th Cir. 2005).  Tracing the history

25  of the grand jury from English common law, the U.S. Supreme Court has observed that grand

26  jurors were not hampered by technical or evidentiary laws, and traditionally could return

27

28                                    5                    08CR1367-JLS

1    indictments based not on evidence presented to them at all, but on their own knowledge of the

2    facts. See Costello, 350 U.S. at 363. In light of this tradition, the Court held that "neither the Fifth

3    Amendment nor any other constitutional provision prescribes the kind of evidence upon which

4    grand juries must act," and that grand jury indictments could not be challenged based on the

5    insufficiency or incompetence of the evidence. Id. Rather, "[a]n indictment returned by a legally

6    constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its

7    face, is enough to call for trial of the charge on the merits." Id. at 409.

8         Here, Defendant suggests no grounds on which proceedings before the grand jury would

9    warrant dismissal of the indictment, nor can he point to anything untoward that might have

10   occurred before the grand jury that could possibly warrant dismissal. As such, his request for

11   transcripts should be denied.

12   **C.     18 U.S.C. § 545 IS NOT UNCONSTITUTIONALLY VAGUE**

13        Defendant contends that the "contrary to law" language found in 18 U.S.C. § 545 is so

14   vague as to render the statute unconstitutional. Defendant's contention is meritless.

15        A criminal statute is unconstitutionally vague if it fails to give a person of ordinary

16   intelligence fair notice that his contemplated conduct is forbidden. United States v. Batchelder,

17   442 U.S. 114, 123 (1979); United States v. Van Hawkins, 899 F.2d 852, 854 (9th Cir. 1990). The

18   statute must define the prohibited actions and must establish the minimum guidelines to govern

19   law enforcement. Kolender v. Lawson, 461 U.S. 352, 357-358 (1983).

20        The essential purpose of an indictment is to "give the defendant notice of the charge so that

21   he can defend his case adequately.'" United States v. Neill, 166 F.3d 943, 947 (9th Cir. 1999)

22   (quoting United States v. James, 980 F.2d 1314, 131 (9th Cir. 1992)). "[W]hile the accused must

23   be afforded full protection, the guilty shall not escape through mere imperfections of pleading."

24   Harmer v. United States, 285 U.S. 427, 432 (1932).

25        Here, the "contrary to the law" language is not vague. Convictions based on violating 18

26

27

28                                      6                    08CR1367-JLS

U.S.C. § 545 and 19 U.S.C. § 1461 have consistently been upheld by the Ninth Circuit.  <u>United States v. Garcia-Paz</u>, 282 F.3d 1212 (9th Cir. 2002); <u>United States v. Davis</u>, 597 F.2d 1237 (9th Cir. 1979); <u>Current v. United States</u>, 287 F.2d 268 (9th Cir. 1961).  Therefore, Defendant's motion should be denied.

**D.    18 U.S.C. § 545 IS NOT UNCONSTITUTIONAL**

Defendant argues that the presence of the following language in 18 U.S.C. § 545 renders the entire statute constitutional: "Proof of defendant's possession of such goods, unless explained to the satisfaction of the jury, shall be deemed evidence sufficient to authorize conviction for violation of this section."  He claims that the presence of such language in the statute renders the entire statute unconstitutional, requiring dismissal of the indictment.

Defendant's argument has no merit, as this language from section 545 appears nowhere in the indictment in this case.  Furthermore, this language appears nowhere in current Ninth Circuit Model Criminal Jury Instruction 8.29 (2008), which generally governs section 545.  Defendant cites utterly no authority for the proposition that the presence of an allegedly unconstitutional burden-shifting provision in a criminal statute that eases the government's burden of proof militates that the *entire statute is unconstitutional* and the remedy is dismissal of the indictment, as opposed to mere excision of the offending language.  As the government has not included the allegedly offending language in the indictment, it need not be dismissed.  The issue of whether *the jury should be so instructed* is an entirely different issue, but one that Defendant raises prematurely and in the wrong context.

The government does not concede at this time that this language is unconstitutional.  In fact, the Comment to Ninth Circuit Model Criminal Jury Instruction 8.29 states that "[t]he statute also provides that proof of defendant's possession of such goods, unless explained to the satisfaction of the jury, shall be deemed evidence sufficient to authorize conviction for violation of this section," and cites to the case of <u>United States v. Salas-Camacho</u>, 859 F.2d 788, 790 (9th Cir. 1988).  In discussing this language in section 545,  the Ninth Circuit noted in <u>Salas-Camacho</u>:

1   "An importer has an obligation to stop and declare items intended for entry into the United States.

2   Courts have required, moreover, that an importer take the first opportunity to declare the goods in

3   their possession." Id. at 790 (quotation marks and citations omitted).  Again, however, this Court

4   need not rule on this issue at this time, as Defendant's motion seeks an inappropriate remedy and

5   is premature.

6   **E.      THE INDICTMENT IS NOT DEFECTIVE**

7          Defendant argues that the indictment in this case is defective, and should be dismissed for

8   three reasons.  First, he claims that the indictment alleges the improper standard for *mens rea*,

9   citing the case of Garcia-Paz, 282 F.3d at 1214.  He claims that "the government must allege in the

10  indictment and prove at trial beyond a reasonable doubt that Mr. Rendon-Lara knew his actions

11  during the importation of the merchandise was contrary to law."  Defendant ignores the fact that

12  the Garcia-Paz court approved of *substantively the same language* in the indictment in that case.

13  The Ninth Circuit observed:

14          A plain reading of the indictment does not support the construction Garcia-Paz
            advances.  The relevant portion of the third count of the indictment reads:
15          "defendant IVAN Garcia-Paz, did knowingly import and bring into the United
            States certain merchandise, to wit, marijuana, contrary to law." The government
16          explains that the phrase "to wit" did not speak to Garcia-Paz's knowledge, but
            rather was there to inform the jury what "merchandise" the government would
17          prove was smuggled. Webster's New World Dictionary supports this argument by
            defining "to wit" as "that is to say; namely." Webster's New World Dictionary
18          1534 (Third College ed. 1988). Hence, from a purely textual and definitional
            analysis, Garcia-Paz's argument fails.

19

20          The indictment in the case declares, in pertinent part, that Defendant did "knowingly and

21  intentionally import and bring into the United States from Mexico certain merchandise, to wit,

22  approximately 102.85 kilograms (approximately 226.27 pounds) of iodine, contrary to law."

23  Under Garcia-Paz, it is simply not defective.  Prior to jury deliberations, this Court will assuredly

24  provide detailed instructions to the jury concerning the required *mens rea* in this case.

25          Second, Defendant claims that the indictment fails to state an offense because the

26  indictment supposedly alleges that Defendant violated 19 U.S.C. § 1461 by failing to "present for

27

28                                              8                    08CR1367-JLS

1    inspection and declare" the iodine found in the vehicle, while Section 1461 states that the

2    merchandise must be "unladen in the presence of and be inspected by a customs officer."

3    Defendant's argument is meritless, as the Ninth Circuit has consistently held that section "1461

4    places upon the importer the obligation to stop and declare items intended for importation."

5    United States v. Davis, 597 F.2d 1237, 1239 (9th Cir.1979); see also U.S. v. Salas-Camacho, 859

6    F.2d 788, 790 (9th Cir. 1988) ("An importer has an obligation to stop and declare items intended

7    for entry into the United States."); United States v. Mirenda, 443 F.2d 1351, 1356-57 (9th Cir.

8    1971) (conviction upheld for "knowingly, with intent to defraud the United States, import(ing) or

9    bring(ing) into the United States marihuana contrary to law . . .," in violation of 21 U.S.C. § 176a,

10   despite fact that customs agents waved defendants' vehicle through two inspection posts without

11   conducting an inspection).

12        Defendant's argument that the sole count of the indictment improperly charges two distinct

13   offenses also is without merit.  In the case Defendant cites, Olais-Castro v. United States, 416 F.2d

14   1155 (9th Cir. 1969), the Ninth Circuit held that "[t]he essential elements of an offense under the

15   only relevant portion of the second paragraph of section 545 are: (1) defendant fraudulently or

16   knowingly, (2) imported or brought into the United States, (3) any merchandise, (4) contrary to

17   law." Id. at 1158.  The implication of this text is clear: despite Defendant's claims, the relevant

18   portion of section 545 *does not* improperly allege two distinct offenses; otherwise, the Ninth

19   Circuit would not have approved of the jury instructions at issue.

20        Defendant's analogy to the case of United States v. Patel, 762 F.2d 784 (9th Cir. 1985),

21   also fails.  In that case, the defendant was, for whatever reason, only charged with "importation

22   of coffee" in the indictment, not importing *and* bringing coffee to the United States.  Id. at 787.

23   Indeed, in Patel, the Ninth Circuit approvingly quoted the exact language from Olais-Castro

24   quoted above.  See id. at 790.  Presumably, the lower court in Patel did not include the "bringing

25   in" language in its jury instructions because *Patel hadn't been so charged*.  It is unclear how Patel

26   is at all relevant to the argument advanced by Defendant.

27

28                                              9                        08CR1367-JLS

Defendant simply fails to appreciate a long-standing rule of criminal procedure: that an indictment can charge an element in the conjunctive and the government's proof can be in the disjunctive. United States v. Booth, 309 F.3d 566, 572 (9th Cir.2002) ("When a statute specifies two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count and proof of any one of those conjunctively charged acts may establish guilt.").

**F.    THE DESCRIPTION OF THE MERCHANDISE SHOULD NOT BE STRICKEN AS SURPLUSAGE**

Defendant claims that the "to wit, approximately 102.85 kilograms (approximately 226.27 pounds) of iodine" language contained in the indictment is surplusage and must be stricken. Although the government concedes that the language is surplusage, there is nothing wrong *per se* with the inclusion of surplusage in a charging document; rather, the purpose of a motion to strike surplusage is to protect a defendant against prejudicial or inflammatory allegations that are neither relevant nor material to the charges.  United States v. Ramirez, 710 F.2d 535, 544-45 (9th Cir. 1983).  The language challenged is neither.  It simply sets forth the nature of the merchandise at issue in the case, which is extremely relevant and material to the charges.  Defendant does not pose any logical explanation for how this language would "confuse the nature of the actual offense and prejudice the jury," Defendant's Additional Motions at 30.  Defendant's argument is meritless.

**G.    DEFENDANT'S STATEMENTS SHOULD NOT BE SUPPRESSED**

Defendant moves for the suppression of Defendant's post-Miranda statement to agents, asserting that the statement was involuntary and that Defendant's Miranda waiver was not knowingly and voluntarily given.  Defendant fails to show that the post-arrest waiver was not knowingly, voluntarily, and intelligently made.  Defendant's motion to suppress statements should be denied.

After being placed under arrest, Defendant was questioned by Special Agents from U.S. Immigration and Customs Enforcement ("ICE").  Defendant was advised of his Miranda rights, which he acknowledged and waived, and then gave a statement.  Defendant moves to suppress

1  statements and requests that the government prove that all statements were voluntarily made, and

2  made after a knowing and intelligent <u>Miranda</u> waiver.  Defendant contends that 18 U.S.C. § 3501

3  mandates an evidentiary hearing be held to determine whether Defendant's statements were

4  voluntary.

5         **1.**    **<u>Knowing, Intelligent, and Voluntary Miranda Waiver</u>**

6       A statement made in response to custodial interrogation is admissible under <u>Miranda v.</u>

7  <u>Arizona</u>, 384 U.S. 437 (1966), and 18 U.S.C. § 3501 if a preponderance of the evidence indicates

8  that the statement was made after an advisement of <u>Miranda</u> rights, and was not elicited by

9  improper coercion.  <u>See</u> <u>Colorado v. Connelly</u>, 479 U.S. 157, 167-70 (1986) (preponderance of

10  evidence standard governs voluntariness and <u>Miranda</u> determinations; valid waiver of <u>Miranda</u>

11  rights should not be found in the "absence of police overreaching").

12       A valid <u>Miranda</u> waiver depends on the totality of the circumstances, including  the

13  background, experience, and conduct of the defendant. <u>North Carolina v. Butler</u>, 441 U.S. 369,

14  374-75 (1979).   To be knowing and intelligent, "the waiver must have been made with a full

15  awareness of both the nature of the right being abandoned and the consequences of the decision

16  to abandon it." <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986). The Government bears the burden

17  of establishing the existence of  a valid <u>Miranda</u> waiver. <u>North Carolina v. Butler</u>, 441 U.S. at 373.

18   In assessing the validity of a defendant's <u>Miranda</u> waiver, this Courts should analyze the totality

19  of the circumstances surrounding the interrogations.  <u>See</u> <u>Moran v. Burbine</u>, 475 U.S. at 421.

20  Factors commonly considered include: (1) the defendant's age (<u>see</u> <u>United States v. Doe</u>, 155 F.3d

21  1070, 1074-75 (9th Cir. 1998) (<u>en</u> <u>banc</u>) (valid waiver because the 17 year old defendant did not

22  have trouble understanding questions, gave coherent answers, and did not ask officers to notify

23  parents), (2) the defendant's familiarity with the criminal justice system (<u>see</u> <u>United States v.</u>

24  <u>Williams</u>, 291 F.3d 1180, 1190 (9th Cir. 2002) (waiver valid in part because defendant was

25  familiar with the criminal justice system from past encounters), (3) the explicitness of the <u>Miranda</u>

26  waiver (<u>see</u> <u>United States v. Bernard S.</u>, 795 F.2d 749, 753 n.4 (9th Cir. 1986) (a written <u>Miranda</u>

27

28                             11           08CR1367-JLS

waiver is "strong evidence that the waiver is valid"); United States v. Amano, 229 F.3d 801, 805 (9th Cir. 2000) (waiver valid where Miranda rights were read to defendant twice and defendant signed a written waiver), and (4) the time lapse between the reading of the Miranda warnings and the interrogation or confession.  See Guam v. Dela Pena, 72 F.3d 767, 769-70 (9th Cir. 1995) (valid waiver despite 15-hour delay between Miranda warnings and interview). Furthermore, if there are multiple interrogations, as occurred in this case, repeat Miranda warnings are generally not required unless an "appreciable time" elapses between interrogations.  See United States v. Nordling, 804 F.2d 1466, 1471 (9th Cir. 1986).

Here, the agents scrupulously honored the letter and spirit of Miranda in carefully advising Defendant of his Miranda rights prior to any post-arrest custodial interrogation.  Defendant agreed to waive his Miranda rights prior to questioning.  Based on the totality of the circumstances, Defendant's statements should not be suppressed because his Miranda waiver was knowing, intelligent, and voluntary.

Defendant's claim that he "expressly, unequivocally and unambiguously told the agents he wanted an attorney," Defendant's Additional Motions at 32, is not belied by the transcript provided by defense counsel[1]/ of the full Miranda reading, specifically as set forth at pages 6 and 7 of Exhibit C to Defendant's Additional Motions.  In pertinent part, after Defendant's mention of an attorney, in addition to acknowledging his Miranda rights, Defendant was variously advised by agents that: (1) "Okay, so if you want an attorney we cannot go on, you cannot speak to us;" (2) "If you want to speak with an attorney and to have an attorney here, this is over;" and (3) "Your name and signature.  Only if you are sure you wish to continue and if you want to talk." Exhibit C to Defendant's Additional Motions at 5-7.  In response to this last advisement, Defendant replied, "Well, yes I wish to talk because I have nothing to hide.  I mean, how I got it, what happened and all that, I have nothing to hide."  Id. at 7.

---

[1]     The United States does not concede the accuracy of this translation and transcription and will provide its own to the Court, should an evidentiary hearing be ordered.

1

### 2.     Defendant's Statements Were Voluntary

The inquiry into the voluntariness of statements is the same as the inquiry into the voluntariness of a waiver of Miranda rights. See Derrick v. Peterson, 924 F.2d 813, 820 (9th Cir. 1990). Courts look to the totality of the circumstances to determine whether the statements were "the product of free and deliberate choice rather than coercion or improper inducement." United States v. Doe, 155 F.3d 1070, 1074(9th Cir. 1998)(en banc).

A confession is involuntary if "coerced either by physical intimidation or psychological pressure." United States v. Crawford, 372 F.3d 1048, 1060 (9th Cir. 2004) (quoting United States v. Haswood, 350 F.3d 1024, 1027 (9th Cir. 2003)). In determining whether a defendant's confession was voluntary, "the question is 'whether the defendant's will was overborne at the time he confessed.'" Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir.), cert. denied, 540 U.S. 968 (2003) (quoting Haynes v. Washington, 373 U.S. 503, 513 (1963)). Psychological coercion invokes no per se rule. United States v. Miller, 984 F.2d 1028, 1030 (9th Cir. 1993). Therefore, the Court must "consider the totality of the circumstances involved and their effect upon the will of the defendant." Id. at 1031 (citing Schneckloth v. Bustamonte, 412 U.S. 218, 226-27 (1973)).

In determining the issue of voluntariness, this Court should consider the five factors under 18 U.S.C. § 3501(b). United States v. Andaverde, 64 F.3d 1305, 1311 (9th Cir. 1995). These five factors include: (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he or she was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he or she was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his or her right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession. 18 U.S.C. § 3501(b). All five

1   statutory factors under 18 U.S.C. § 3501(b) need not be met to find the statements were voluntarily

2   made.  See Andaverde, 64 F.3d at 1313.

3          As discussed above, Defendant was read his Miranda rights pre-interview.  After

4   Defendant acknowledged his Miranda rights, a dialogue ensued between the ICE agents and

5   Defendant, whereupon Defendant decided to make a statement without having an attorney present.

6   Defendant clearly understood his Miranda rights and agreed to waive those rights.  See United

7   States v. Gamez, 301 F.3d 1138, 1144 (9th Cir. 2002).  Defendant's statements were not the

8   product of physical intimidation or psychological pressure of any kind by any government agent.

9   There is no evidence that Defendant's will was overborne at the time of his statements.

10  Consequently, Defendant's motion to suppress his statements as involuntarily given should be

11  denied.

12  **H.     ANY CELLULAR TELEPHONES SHOULD NOT BE SUPPRESSED**

13         Defendant claims that any cellular telephones recovered in this case should be suppressed

14  because such searches were done without a warrant and without voluntary consent. Even assuming

15  *arguendo* that Defendant did not consent to such searches, any such search is nonetheless proper

16  as a border search, a valid exception to the warrant requirement.  "Courts have long held that

17  searches of closed containers and their contents can be conducted at the border without

18  particularized suspicion under the Fourth Amendment."  United States v. Arnold, --- F.3d ----,

19  2008 WL 2675794 (9th Cir. 2008).  In Arnold, the Ninth Circuit held that "that reasonable

20  suspicion is not needed for customs officials to search a laptop or other personal electronic storage

21  devices at the border." Id. at *5.  Furthermore, any such search was also valid as a search incident

22  to arrest.  See United States v. Robinson, 414 U.S. 218 (1973).  Defendant's argument is meritless.

23  **I.     NO OPPOSITION TO LEAVE TO FILE FURTHER MOTIONS**

24         The United States does not object to the granting of leave to allow Defendant to file further

25  motions, as long as the order applies equally to both parties and additional motions are based on

26

27

28                                      14                          08CR1367-JLS

newly discovered evidence or discovery provided by the United States subsequent to the instant motion at issue.

## IV

## <u>CONCLUSION</u>

For the foregoing reasons, the government respectfully requests that Defendant's motions, except where not opposed, be denied.


DATED: August 8, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney


<u>s/ William A. Hall, Jr.</u>
WILLIAM A. HALL, JR.
Assistant United States Attorney

15                                          08CR1367-JLS